## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LAVONDA GRANT,

      Plaintiff,

      v.                                  Case No. 19-2301-JAR

CRYSTAL LAKE PARTNERS, INC.,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff Lavonda Grant brings this action against her former employer, Defendant Crystal Lake Partners, Inc., alleging retaliation for reporting racially offensive conduct by a co-worker under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  Before the Court is Defendant's Motion for Summary Judgment (Doc. 28).  The motion is fully briefed and the Court is prepared to rule.  As described more fully below, Defendant's motion is granted.

## I.       Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3]  A fact is "material" if,

---

[1] Fed. R. Civ. P. 56(a).

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  A

dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of

fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine dispute of material fact

and entitlement to judgment as a matter of law.[6]  Once the movant has met the initial burden of

showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving

party to "set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving

party may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party

must "set forth specific facts that would be admissible in evidence in the event of trial from

which a rational trier of fact could find for the nonmovant."[9]  In setting forth these specific facts,

the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or

specific exhibits incorporated therein."[10]  A nonmovant "cannot create a genuine issue of

material fact with unsupported, conclusory allegations."[11]  A genuine issue of material facts must

be supported by "more than a mere scintilla of evidence."[12]  Finally, summary judgment is not a

---

[4] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[8] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[10] *Adler*, 144 F.3d at 671.

[11] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[12] *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

"disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

II.     **Uncontroverted Facts**

The following facts are either uncontroverted, stipulated, or viewed in the light most favorable to Plaintiff.

*Plaintiff's Tenure and Relevant Employment Policies*

Plaintiff is an African-American female. Defendant is a franchisee for Popeyes and MOD Pizza restaurants with approximately 400 employees and approximately 22 restaurants in the Kansas City market. Defendant hired Plaintiff on December 19, 2019, as a cashier at the Popeyes restaurant located on West 119th Street in Olathe, Kansas; she was employed from December 26, 2018 to January 10, 2019. Plaintiff worked a total of 55.65 hours during her employment. Specifically, Plaintiff worked shifts on December 26, 2018; December 28, 2018; December 31, 2018; January 1, 2019; January 2, 2019; January 3, 2019; January 4, 2019; and January 7, 2019.

Defendant had a No Call No Show ("NCNS") policy that provided as follows:

> An employee with a "No Call No Show" will be considered to have voluntarily resigned his or her position by job abandonment the first time it occurs. Exceptions will only be made for verifiable and extreme circumstances and with approval [of] the Human Resources Director.
>
> 1.     Not reporting for a scheduled shift and not calling is considered a "No Call No Show".
>
> 2.     Calling in 4 hours or more after the scheduled start time of your shift will be considered a "no call, no show."
>
> 3.     A "No call, No Show" is considered a voluntary resignation of employment due to job abandonment.

---

[13] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

> 4.      If you are a NCNS you are ineligible for rehire for 1 full
>         year from the date of the NCNS.
>
> NCNS is considered voluntary resignation for job
> abandonment . . . .[14]

Defendant also had a 30 Day Trial Period policy.  If a new employee has more than one tardy or unscheduled absence during the first 30 days, he or she "will be terminated."[15]  Also, if a new employee during this period does "not meet job performance requirements or do[es] not fit the Popeyes [sic] culture," that employee "will not move into regular employee status and be employed beyond the trial period."[16]

Prior to her first shift, Plaintiff reviewed Defendant's employment policies and agreed to comply with them.

### Co-Worker Harassment Allegations

During Plaintiff's shift on Thursday, January 3, 2019, she was standing next to her co-worker, Hunter Pulse, when a news program came on a television in the restaurant featuring a story about an African-American woman and her daughter who were crime victims.  Plaintiff commented that the story was sad, to which Pulse replied, "fuck the niggers, throw them up under the jail cell."[17]  Plaintiff reported this comment to the manager on duty, Carol, the same day.  She told Carol that she did not want to work around Pulse.  Carol responded that she would talk to Pulse.

On Friday, January 4, 2019, Ben Vickers, the store manager, asked Plaintiff what Pulse said to her the day before, and Plaintiff told him.  Plaintiff told Vickers that she did not want to

---

[14] Doc. 30-1 at 9.

[15] *Id.* at 5.

[16] *Id.*

[17] Doc. 32-1 at 10:21–22.

work with Pulse anymore, and Vickers said he would speak with Pulse.  At some point, Plaintiff's complaint reached Amanda Neupert, the District Manager.  Neupert spoke to another of Plaintiff's co-workers, Juanita Butler, who confirmed that Plaintiff told her about Pulse's comments.  Neupert testified that she also spoke to Pulse, who denied Plaintiff's allegations.

After Plaintiff's report, she continued to work alongside Pulse, and he continued to say inappropriate things to her.  Pulse referred to Plaintiff as a "black girl" at least twice when referencing Plaintiff's work, and he called Plaintiff a "bitch" as he walked by her in the store.  Plaintiff does not recall when these alleged statements were made, although they must have occurred on either January 4 or January 7, 2019, as these were the only other days Plaintiff worked after her initial report.  She did not report these subsequent statements to anyone.  Pulse was not disciplined for any of the comments he made to Plaintiff.

### Plaintiff's 30-Day Trial Period

Plaintiff's Employee Record Sheet indicates that she had an unexcused absence on December 28, 2018, her first tardy on January 4, 2019, a one-hour unapproved break on January 4, 2019, a 49-minute unapproved break on January 7, 2019, and a second unexcused absence on January 9, 2019.

Sometime before January 9, 2019, Vickers drafted with Neupert's help a Request to Terminate a 30 Day Trial Employee.  Vickers' request cited several reasons for recommending termination, including that Plaintiff: (1) "does not demonstrate a positive attitude and demeanor toward both guest[s] and coworkers"; (2) "has demonstrated a poor ability to work as part of a team"; and (3) "does not demonstrate an effort to provide outstanding customer service 100% of the time."[18]  Vickers provided examples of each reason for recommending termination.

---

[18] Doc. 32-9.

Termination under the 30 Day Trial Period policy requires approval from the District Manager and the Human Resources ("HR") Director.  The HR Director, Shelly Lang, did not learn about Vickers' request to terminate Plaintiff until after Plaintiff filed a charge of discrimination almost one month after her employment ended.  Vickers' request had been received by an HR generalist in Lang's office, but Lang did not see it at the time of submission.

### Plaintiff's Attendance

As a matter of practice, Defendant's work schedules are posted on the "huddle board" or communications board in the back of the restaurant's prep area at noon on the Friday before each work week.  During the term of Plaintiff's employment, she normally relied on someone to tell her which days she was scheduled to work because the schedule was not posted all the time. Defendant has not produced a copy of the weekly schedule from the week starting Monday, January 7, 2019.  Plaintiff did not see the schedule for that week, but she was scheduled to work on at least Monday and Thursday.

Plaintiff worked her last shift for Defendant on Monday, January 7, 2019.  She did not work on Tuesday, January 8, 2019.  Plaintiff obtained prior approval to be off on Wednesday, January 9, 2019, to attend a hearing in Lenexa municipal court.  On January 9, Plaintiff called the restaurant twice to ask whether she was scheduled to work the following day and was told both times that someone would call her back, but she never received a return call.  Plaintiff therefore did not report to work on Thursday, January 10, 2019, nor did she call the store to report that she would be absent.  On Friday, January 11, Plaintiff was informed by phone that she was terminated for violating the NCNS policy by not reporting to work on Thursday, January 10.

Defendant utilizes a Personnel Action Notice ("PAN") form for its employees.  The last section of the form is titled "Termination of Employment," and contains three check boxes:

"Voluntary Resignation," "No Call/No Show," and "Involuntary Resignation Approved by HR (attach documentation)."[19]  The No Call/No Show box is checked on Plaintiff's form, dated January 10, 2019.

Not every employee who violates the NCNS policy is considered to have terminated employment—Lang makes the decision.  Under the policy, Lang must determine whether an exception should be made.  For example, employee T.B., who worked at a different Popeyes location under different managers "was given a pass on a NCNS on her 1st week here" in May 2019.[20]  T.B.'s PAN indicates "Involuntary Resignation Approved by HR" on June 5, 2019.  Attached to her PAN was a Request to Terminate a 30 Day Trial Employee, prepared by her manager.  In that document, her manager explained that after T.B. was given the NCNS pass during her first week of employment, she "signed a memo saying she will call in no matter what."[21]  According to Neupert, "usually when we give a memo, there is a reason behind it."[22]  The Request to Terminate stated that T.B. had two more instances of not coming into work when scheduled, and was disrespectful to her manager when called about her absences.  T.B. did not report race discrimination or racial harassment prior to her NCNS.

Employee D.H., who is African-American, worked at the same Popeyes location as Plaintiff from October 2016 through March 2017, and was supervised by Neupert before Neupert became a district manager.  D.H. violated the NCNS policy for the first time on March 24, 2017, when he came to work at 4:10 for a shift that was to begin at 11:30 that morning.  His PAN

---

[19] Doc. 30-8 at 2.

[20] Doc. 32-11 at 2.

[21] *Id.*

[22] Doc. 32-2 at 60:19-22.

includes a check in the No Call/No Show box in the Termination of Employment section, dated March 24, 2017.  D.H. did not report race discrimination or racial harassment before the NCNS.

In the last three years, ten Caucasian cashiers and ten African-American cashiers, including Plaintiff, were deemed to have abandoned their employment from the Olathe Popeyes restaurant under the NCNS policy.  Other than Plaintiff, none of these employees lodged complaints of discrimination or harassment based on race.

## III.    Discussion

In her response brief, Plaintiff dismissed Counts I and III for race discrimination and racial harassment under Title VII and 42 U.S.C. § 1981.  Therefore, the only claims that remain are her claims of retaliation under Title VII and § 1981.  The analysis is the same for both claims.[23]

Plaintiff's retaliation claims must be decided under the familiar *McDonnell Douglas v. Green*[24] burden-shifting framework because Plaintiff relies on circumstantial evidence.[25]  Under *McDonnell Douglas*, plaintiff initially bears the burden of production to establish a prima facie case of retaliation.[26]  The burden of establishing the prima facie case is "not onerous."[27]  If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions.[28]  If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of

---

[23] *See, e.g., Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

[24] 411 U.S. 792, 802–05 (1973).

[25] *See, e.g., Crowe*, 649 F.3d at 1194.

[26] *McDonnell Douglas*, 411 U.S. at 802.

[27] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 238, 253 (1981).

[28] *Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

belief."[29]  Defendant argues on summary judgment that Plaintiff is unable to establish a prima facie case of discrimination, and that even if she does, Defendant has articulated a nonretaliatory reason for her termination and Plaintiff cannot demonstrate that it is pretext for retaliation. Plaintiff contends that genuine issues of material fact preclude summary judgment.

### A.      Prima Facie Case

The elements of a prima facie claim of retaliation under Title VII and § 1981 are: (1) the employee engaged in protected opposition to discrimination; (2) the employee suffered an adverse employment action during or after his protected opposition that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.[30]  Defendant does not dispute the first and third elements of Plaintiff's prima facie case, but challenges the adverse action element.  "[A]n employer's action is adverse under Title VII if it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[31]

Defendant argues that there was no materially adverse action in this case because Plaintiff voluntarily abandoned her employment by failing to show up for work or reporting herself absent on Thursday, January 10, 2019.  Defendant relies on two unpublished, nonbinding cases holding that violation of a NCNS policy such as Defendant's constitutes voluntary abandonment, and therefore cannot amount to a materially adverse employment action.[32]  The

---

[29] *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[30] *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006).

[31] *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

[32] *Leura v. Heart Ctr. Med. Grp.*, No. 1:07-cv-101, 2008 WL 11504549, at *5 (N.D. Ind. Feb. 8, 2008) (finding abandonment where the plaintiff failed to show up to work three days in a row, after history of poor attendance, and after refusal to offer an excuse for her absences); *Carlisle v. Sallie Mae, Inc.*, No. 5:05 CV 188 MCR EMT, 2007 WL 141138, at *11 (N.D. Fla. Jan. 17, 2007) (considering NCNS allowing employer to deem job abandoned after three consecutive days of NCNS and finding no adverse employment action).

Court assumes without deciding that Plaintiff meets her *de minimis* prima facie burden and proceeds to consider the rest of the *McDonnell Douglas* test below.

**B.     Defendant's Legitimate, Non-Retaliatory Reason for Termination**

Defendant contends that Plaintiff was terminated for violating its race-neutral NCNS policy and the H.R. Director determined that no exception to that policy should be made.  That written policy provides that an employee is considered to have voluntarily resigned for a NCNS the first time it occurs unless the H.R. Director determines that an exception should be made. This fulfills Defendant's burden of articulating a legitimate, non-retaliatory reason for Plaintiff's termination.  The burden therefore shifts back to Plaintiff to show that this non-retaliatory reason for her termination is pretextual.

**C.     Pretext**

Pretext may be shown by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[33] Pretext can also be demonstrated by "direct evidence that the proffered rationale is false, or that the plaintiff was treated differently from similarly-situated employees."[34]  "The critical question regarding this aspect of the *McDonnell Douglas* rubric is whether 'a reasonable factfinder could rationally find [the employer's rationale] unworthy of credence and hence infer that the employer

---

[33] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006).

[34] *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011) (citing *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007)).

did not act for the asserted [non-retaliatory] reasons.'"[35]  The Court examines "the facts as they appear *to the person making the decision*."[36]

Plaintiff argues that the summary judgment record demonstrates a genuine issue of material fact as to the following indicators of pretext: (1) close temporal proximity between her report of harassment and her termination; (2) inconsistent reasons for her termination; (3) the proffered reason for her termination is false; (4) similarly-situated individuals were treated more favorably under subjective criteria; (5) Defendant did not investigate her report of racial harassment; (6) her alleged harasser was not disciplined; and (7) she was never previously disciplined for poor performance.

### 1.    Temporal Proximity

Plaintiff argues that the close temporal proximity between her complaint about Pulse's comments and termination supports a finding of pretext.  To be sure, the Court may consider close temporal proximity in analyzing pretext, but "temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext."[37]  There must be other evidence of pretext.[38]  Here, it is uncontroverted that Plaintiff's termination closely followed her complaint seven days earlier.  The Court considers below whether there is additional circumstantial evidence of retaliatory motive to raise a fact issue on pretext.

---

[35] *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015) (quoting *Crowe*, 649 F.3d at 1196) (alterations in original).

[36] *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (en banc) (quoting *Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001)).

[37] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 976 (10th Cir. 2017) (quoting *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 (10th Cir. 2007)).

[38] *Id.*

## 2.      Inconsistent Reasons for Termination; Plaintiff's Performance

Plaintiff argues that Defendant provided inconsistent reasons for her termination, pointing to Vickers' Request for Termination submitted to HR before Plaintiff's NCNS on January 10, 2019.  The Tenth Circuit has explained that "a jury can reasonably infer pretext when an employer is 'inconsistent in the reasons it provide[s] for the termination.'  Such inconsistencies include abandoning explanations that the employer previously asserted."[39]  But here, the employer did not provide inconsistent reasons for Plaintiff's termination.  The reason consistently provided to Plaintiff for termination was the NCNS violation.  It is uncontroverted that the NCNS was provided to Plaintiff on January 11 by telephone as the reason for her termination, and Plaintiff's PAN reflects the NCNS as the reason for her termination.  Defendant continues to rely on this reason for her termination in litigation.

While it is uncontroverted that Vickers, with Neupert's help, submitted a request for termination under the 30-Day Trial Period policy, it is also uncontroverted that that request was never approved by HR and was not processed before the NCNS decision was made.  Lang did not see the request until after Plaintiff filed her charge of discrimination.  And there is no evidence that the 30 Day Trial Period policy was ever provided by Defendant to Plaintiff as a reason for her termination before the document was discovered in litigation.  Vickers' request, prepared before Plaintiff's NCNS and never reviewed by the HR director, does not demonstrate that Defendant provided inconsistent reasons for Plaintiff's termination.[40]  Defendant never abandoned the original reason given for Plaintiff's termination—violation of the NCNS policy.

---

[39] *Fassbender v. Correct Care Sol., LLC*, 890 F.3d 875, 887 (10th Cir. 2018) (citation omitted) (quoting *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 994 (10th Cir. 2005)).

[40] *See, e.g.*, *Payan v. United Parcel Serv.*, 792 F. App'x 634, 647 (10th Cir. 2019) (finding no inconsistent justifications for discipline where the employer gave a clear explanation at the time of the decision and never abandoned it; providing more detail later did not demonstrate pretext); *Fassbender*, 890 F.3d at 887 (finding inconsistent justifications where the plaintiff was given shifting reasons about why she was terminated, which continued to change after the EEOC charge was filed).

The fact that there exist in the record additional non-retaliatory reasons supporting Plaintiff's termination is not evidence of pretext.[41]

Plaintiff also argues that Defendant's previous failure to discipline her for performance issues calls into question the basis for her termination. But again, Defendant did not and does not rely on Plaintiff's poor performance in justifying her termination. Because there is no genuine issue of material fact about whether Vickers' Request for Termination was related to Plaintiff's NCNS violation on January 10, the fact that Plaintiff was not disciplined for any performance shortcomings before termination is immaterial; it does not demonstrate that Defendant's stated reason for her termination is unworthy of belief.

### 3.      False Reason for Termination

Plaintiff also argues that the reason given by Defendant for her termination is false, pointing to evidence that she did not know her schedule for the week of January 7, she tried to call in on January 9 to see if she was on the schedule for the following day, and Defendant failed to return her call as promised to advise her whether she was on the schedule for the following day. But the Court evaluates the facts as they appear to the person making the decision. There is no evidence that the decisionmakers knew Plaintiff was unaware of her schedule for the week of January 7, or that they knew Plaintiff called on January 9 to find out if she needed to work the next day. Instead, the decisionmakers enforced the NCNS policy as written. It is immaterial whether Plaintiff in fact knew that she was supposed to work on January 10 and failed to show up. "To support an inference of pretext, . . . a plaintiff must produce evidence that the employer did more than get it wrong. He or she must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden

---

[41] *See Rolland v. Carnation Bldg. Servs., Inc.*, 739 F. App'x 920, 924 (10th Cir. 2018).

discriminatory agenda."[42]  Plaintiff offers no evidence other than her own subjective belief that she was not scheduled to work to demonstrate the falsity of Defendant's proffered reason for the termination.  Such evidence does not create a genuine issue of material fact about whether the decisionmakers genuinely believed that Plaintiff violated the NCNS policy.

### 4.    Treatment of Similarly-Situated Employees and Subjective Criteria

Plaintiff may be able to demonstrate pretext with "evidence that [s]he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness."[43]  Plaintiff suggests that she was treated differently than T.B. and D.H., similarly-situated individuals who did not engage in protected activity and who also violated the NCNS policy.  To be "similarly-situated," the employees must share the same decisionmaker, and be "disciplined for conduct of comparable seriousness."[44]

First, Defendant argues that T.B. and D.H. are not similarly-situated because they had different immediate supervisors.  Indeed, T.B. worked at a different store than Plaintiff with different managers.  D.H. worked at the same store, but under a different store manager.  Plaintiff responds that all three employees shared a common HR Director, Lang, who exercised subjective discretion in determining whether an employee's NCNS constituted job abandonment or whether an exception to the policy should be made.  Assuming the sufficiency of Lang's common supervision, there is no evidence in the summary judgment record that Lang was aware of Plaintiff's protected activity before the NCNS decision was made.  Without knowledge of Plaintiff's complaints to Carol and Vickers, Lang could not have treated similarly-situated individuals differently under the NCNS policy based on their lack of protected activity.  Nor

---

[42] *Johnson v. Weld Cty.*, 594 F.3d 1202, 1211 (10th Cir. 2010).

[43] *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000)).

[44] *Id.* at 540–41.

could she have applied subjective criteria disproportionately based on Plaintiff's complaint if she was unaware of the complaint at the time of her decision.

Moreover, it is uncontroverted that over the last three years, ten Caucasian cashiers and ten African-American cashiers, including Plaintiff, were deemed to have abandoned their employment from the Olathe Popeye's restaurant under the NCNS policy. None of these employees except Plaintiff lodged complaints of discrimination or harassment based on race. The Court agrees with Defendant that the uncontroverted facts about comparator D.H., who worked at the same Popeye's location as Plaintiff, rebut rather than support Plaintiff's pretext argument. D.H. made no complaint of race discrimination or racial harassment, yet like Plaintiff, the NCNS policy was enforced against him on his first violation at the same Popeye's location by a manager that eventually became Plaintiff's district manager.

Plaintiff argues that because Lang had discretion in enforcing the NCNS policy, the decision to terminate Plaintiff relied on "subjective criteria" that can sometimes evidence pretext. But the use of subjective criteria by an employer, standing alone, will not demonstrate pretext.[45] Moreover, the cases finding pretext based on such evidence involve subjective performance criteria—Plaintiff provides no authority or argument to explain how a subjective determination about whether an exception to this straightforward NCNS policy applies is analogous to subjective performance evaluations.[46] The Court cannot find that the limited discretion provided to Lang under Defendant's NCNS policy gives rise to a showing of pretext,

---

[45] *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007).

[46] *Burnett v. S.W. Bell Tele., L.P.*, 471 F. Supp. 2d 1121, 1137 (D. Kan. 2007) (distinguishing subjective component of absentee policy with subjective criteria in performance evaluations, and stating: "Plaintiff has cited no case—and the Court is aware of none—which supports that a finding of pretext can be based on the mere fact that an employer's absentee policy allows a manager discretion in deciding whether to terminate an employee.").

particularly given her lack of knowledge about Plaintiff's protected activity at the time of Plaintiff's termination.

### 5.      Failure to Investigate Plaintiff's Complaint or Discipline Pulse

The "'failure to conduct what appeared to be a fair investigation of' the violation that purportedly prompted adverse action may support an inference of pretext."[47]  Plaintiff argues that her store managers failed to conduct an investigation into her complaint about Pulse, demonstrating that her termination days later was a pretext for retaliation.  The Court finds no genuine issue of material fact on this record about whether the investigation was adequate given the short time frame between Plaintiff's complaint about Pulse and her termination.  Plaintiff claims that it is uncontroverted that "Defendant did not investigate Plaintiff's reports of harassment or discrimination."[48]  But this fact is not supported by the record.  The interrogatory response relied on by Plaintiff states that although Defendant denies Plaintiff reported or complained of "racial harassment or race discrimination" before her charge of discrimination, "Defendant has investigated Plaintiff's allegations in this lawsuit but that investigation is protected by the attorney-client privilege and work product doctrine."[49]

Moreover, it is uncontroverted that Plaintiff's shift manager, Carol, must have reported the January 3 complaint to Vickers because the following day Vickers asked Plaintiff to tell him what happened with Pulse and assured her he would talk to Pulse.  Plaintiff worked one more shift after this conversation and before her NCNS.  Nonetheless, District Manager Neupert testified in her deposition that she spoke to Pulse about Plaintiff's allegations in the interim, and

---

[47] *Smothers*, 740 F.3d at 542 (quoting *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008)).  The cases that discuss this type of pretext evidence involve the failure to investigate the act giving rise to the adverse employment action, not the protected activity.  *See, e.g.*, *id.*; *Dewitt v. S.W. Bell Tele. Co.*, 845 F.3d 1299, 1314 (10th Cir. 2017).

[48] Doc. 32 at 14 ¶ 12.

[49] Doc. 32-5.

that he denied making the racist statements.[50]  Given that only five business days separated Plaintiff's complaint and her NCNS, a reasonable jury could not find that Defendant's investigation of Plaintiff's complaint was so inadequate as to call into question Defendant's stated reason for the termination.

Likewise, a reasonable jury could not find that Defendant's failure to discipline Pulse demonstrates that its termination of Plaintiff for her NCNS violation was pretextual.  Over the course of five business days, Plaintiff's immediate supervisors spoke to one another and to the district manager about the allegations, and the district manager interviewed Pulse, who denied the allegations.  Such evidence does not raise an issue of fact as to whether Defendant honestly believed Plaintiff violated the NCNS policy when it terminated her on January 10, 2019.

For the reasons stated above, assuming Plaintiff can demonstrate a prima facie case of retaliation under Title VII and § 1981, Defendant has articulated a legitimate, non-retaliatory reason for Plaintiff's termination and Plaintiff has failed to come forward with evidence sufficient to allow a reasonable jury to find Defendant's reason unworthy of belief.  Defendant's motion for summary judgment is therefore granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 28) is **granted**.

**IT IS SO ORDERED.**

Dated: May 8, 2020

                              S/ Julie A. Robinson
                              JULIE A. ROBINSON
                              CHIEF UNITED STATES DISTRICT JUDGE

---

[50] Doc. 32-3 at 47:1–24.